UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.  07-60253-CR-DIMITROULEAS

UNITED STATES OF AMERICA,

    Plaintiff,

v.

ENGINO ALONSO JENKINS,
a/k/a "Donnie Doctor,"

    Defendant.
_____/

**DETENTION ORDER**

    Pursuant to 18 U.S.C. § 3142(f), on July 14, 2008, the Court held a hearing to determine whether Defendant Engino Alonso Jenkins should be detained prior to trial.  Having considered the factors enumerated in 18 U.S.C. § 3142(g), this Court finds that no condition or combination of conditions will reasonably assure the appearance of this defendant as required or the safety of any other person and the community.  Therefore, it is hereby **ORDERED** that Defendant Engino Alonso Jenkins be detained prior to trial and until the conclusion thereof.

    In accordance with the provisions of 18 U.S.C. § 3142(i), the Court hereby makes the following findings of fact and statement of reasons for the detention:

    1.  The defendant is charged by indictment with being previously convicted of a crime punishable by imprisonment for a term exceeding one year and knowingly possessing a firearm and ammunition in and affecting interstate commerce, in violation of Title 18, United States Code, Sections 922(g)(1) and 924(e).  This case does not involve a crime described in Title 18, United States Code, Section 3142(f)(1).  Although the charge under Sections 922(g)(1) and 924(e) carries

with it a minimum mandatory term of imprisonment of fifteen years, the charge of felon in possession of a firearm does not constitute a "crime of violence" under Section 3142(f)(1)(A) in this Circuit. *U.S. v. Johnson*, 399 F.3d 1297, 1302 (11th Cir. 2005). Nor does the crime charged in this case meet any other circumstance articulated by Section 3142(f)(1). Consequently, no presumption of risk of flight and danger to the community applies. The United States seeks detention on the basis of danger to the community.

2. Title 18, United States Code, Section 3142(g)(2), requires the Court to consider the weight of the evidence against the defendant. Here, the weight of the evidence is significant. The government has presented the sworn testimony of Detective Osvaldo Tianga of the Broward County Sheriff's Office ("BSO").

Detective Tianga testified and attested to the following: Detective Tianga was involved in controlled buys with a confidential informant ("CI"), with whom he had worked in the past, over a period of approximately the past six to seven years. Detective Tianga further testified that the CI had previously been found to be reliable, and also had not been shown on any previous occasion to be unreliable. Although the CI was a convicted felon whom BSO paid a set amount, the CI did not receive a reward for work resulting in a successful arrest. Before these buys, Detective Tianga explained that he was not targeting Defendant and, in fact, did not know Defendant, but was instead targeting the particular vicinity in which Defendant resided. Detective Tianga stated that the CI identified Defendant as "Dred."

On September 4, 2007, Detective Tianga searched the CI, provided him with official government currency, and drove him to a residence. At the residence, the CI exited the car, and Detective Tianga testified that he watched the CI engage in a narcotics transaction with Defendant,

as Defendant stood in the open doorway of the residence. Following the transaction, Detective Tianga took the CI to a secure location and obtained from the CI cocaine allegedly purchased from Defendant. Defendant was not arrested at that time due to the ongoing nature of the investigation pending at that time.

A state search warrant for the residence where the transaction occurred was obtained on September 11, 2007, and executed on September 20, 2007. Prior to execution of the warrant, the CI had provided information that firearms were present at the residence. When law enforcement entered the residence, Defendant was awake and watching television. A loaded .25 mm Phoenix Arms Raven pistol in plain view lay on the bed with Defendant, although he did not reach for it when the officers entered the room. The gun contained a round in the chamber, and seven bullets were located near Defendant's side. Detective Tianga was not sure when asked if the guns seized were submitted for fingerprinting or DNA tests, although he noted his practice would have been to perform an initial test to see whether anything of forensic value appeared to exist on the weapons before determining whether to send the guns for further testing. Although Detective Tianga testified that he read Defendant his *Miranda* rights, and Defendant appeared to understand them, Detective Tianga did not have Defendant sign a waiver because Defendant was being treated by medical personnel for a burn to his arm resulting from law enforcement's use of an incendiary device upon entry into the residence.

During the course of the search, law enforcement discovered a fully loaded Browning Arms .9 mm gun in the kitchen, with a round in the chamber and two loaded ammunition clips recovered from the stove (47 bullets in total). A gun box and box of ammunition were found on top of the kitchen cabinet. The guns were manufactured outside the state of Florida and were test-fired and

found to be operational. In addition, crack cocaine, powder cocaine, marijuana, prescription drugs including Xanax and Oxycodone, and distribution paraphernalia were found in the kitchen and kitchen cabinet above the sink. Law enforcement also recovered a scale on top of the microwave oven. Additionally, the search yielded $590 in United States currency located in a pair of shorts lying on the floor. Mail addressed to Defendant in his alias, "Donnie Doctor," although addressed to a different location, was seized from the top of the refrigerator.

The apartment lease reflected that it was leased to Engino Alfonso Jackson, Jr. After Miranda rights were read to the Defendant, he made statements to the following effect to the transport officer: "Man, why you had to come in so hard? I just had little guns, no AK-47's." "Man, I ain't got no education, no family, no skills, how am I supposed to make a living besides this?" "You see me back in five [years], I get me a good lawyer." Based on the facts as stated by Detective Tianga, the Court finds the weight of the evidence against Defendant to be of significance.

3. The pertinent history and characteristics of the Defendant, of which Sections 3142(g)(3)(A) and (B) require a review, also support pretrial detention. The Pretrial Services Report indicates that Defendant has multiple prior felony convictions. Indeed, the government submits that Defendant qualifies for "armed career criminal" status. Among other convictions of note, Defendant was convicted of attempted second-degree murder, armed robbery, aggravated battery with a firearm, armed robbery with a firearm, "homicide willful kill weapon," numerous narcotics possession and trafficking violations, and fraud and impersonation. Additionally, he is alleged to have committed the instant offense while on probation. In short, Defendant's record militates strongly in favor of detention on the basis of danger to the community.

The Defendant is a 34-year-old United States citizen and a lifelong resident of South Florida.

Defendant indicated to Pretrial Services that he does not have a passport nor has he traveled outside the United States within the last two years. The Court notes, however, that Defendant possesses multiple aliases.[1] This, in view of the minimum mandatory fifteen-year sentence Defendant faces if convicted, along with Defendant's prior conviction for fraud and impersonation, supports a finding that Defendant poses a serious risk of flight.

4. Based on the seriousness of the alleged circumstances surrounding the offense conduct in this case, taking into account Defendant's past record, his use of aliases, his arrest while he was on probation for another offense, and the minimum mandatory fifteen-year sentence Defendant faces if convicted on the instant charges, I believe that Defendant would not appear if released on bond prior to trial and that Defendant constitutes a danger to the community. 18 U.S.C. §3142(g)(3) and (4). The Court therefore finds, based on clear and convincing evidence, that Defendant would pose a danger to the safety of other persons and the community, and by a preponderance of the evidence, that Defendant constitutes a serious flight risk. Thus, the Court specifically finds that there are no conditions or combination of conditions which reasonably will assure Defendant's appearance as required and/or the safety of any other person and the community. 18 U.S.C. § 3142(e).

5. Accordingly, the Court hereby directs:

(a) That Defendant be detained without bond and be committed to the custody of the Attorney General for confinement in a corrections facility separate, to the extent practical, from persons awaiting or serving sentences or being held in custody pending appeal;

(b) That Defendant be afforded reasonable opportunity for private consultation with

---

[1] Although the Pretrial Services Report reflects that Defendant has, on four occasions, been charged with resisting arrest dating from 1991 to 2005, because the Pretrial Services report shows no convictions, the Court does not consider these charges in its pretrial detention finding.

counsel; and

        (c) That, on order of a court of the United States or on request of an attorney for the Government, the person in charge of the corrections facility in which Defendant is confined deliver Defendant to a United States Marshal for the purpose of an appearance in connection with a court proceeding.

**DONE AND ORDERED** at Fort Lauderdale, Florida, this 14th day of July, 2008.

_____
ROBIN S. ROSENBAUM
United States Magistrate Judge

Copies to:

Patrick Hunt, AFPD
Donald F. Chase, II, AUSA
Pretrial Services (FTL)